## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **MAGISTRATE NO.  25-510-1** |
| **v.** | |
| | **CRIMINAL ACTION** |
| **VIRGINIA BASORA GONZALEZ** | **NO. 25-143** |

## OPINION

Defendant Virginia Basora Gonzalez has been charged with one count of illegal reentry in violation of 8 U.S.C. §§ 1326(a), (b)(2).  Upon motion from the Government pursuant to the Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, a Magistrate Judge ordered Gonzalez detained pending trial.  Gonzalez now moves to vacate that Pretrial Detention Order pursuant to 18 U.S.C. § 3145.  For the reasons that follow, Gonzalez's Motion shall be granted.

### I.      BACKGROUND

Gonzalez is a citizen of the Dominican Republic who, at some point, illegally entered the United States.  In 2019, she was charged with, pleaded guilty to, and was sentenced for one count of attempted possession with intent to distribute fentanyl in violation of 21 U.S.C §§ 846, 841(a)(1), (b)(1)(B), and aiding and abetting in violation of 18 U.S.C. § 2.  Upon release from jail, she was deported to the Dominican Republic by Final Administrative Removal Order.

Within the last four years, Gonzalez returned to the United States.  On March 12, 2025, agents from the United States Immigration and Customs Enforcement ("ICE"), acting on a tip, administratively arrested her in Philadelphia, served her with a Notice of Intent to Reinstate the Prior Order of Deportation and, then, notified the U.S. Attorney's Office for the Eastern District of Pennsylvania, which office promptly served her with a criminal complaint, then an indictment

(*United States v. Gonzalez*, No. 25-cr-143, ECF No. 21 (Apr. 8, 2025) charging her with one count of illegal reentry in violation of 8 U.S.C. §§ 1326(a), (b)(2).  Although Gonzalez is currently in the custody of the United States Marshals Service, ICE has lodged an administrative detainer against her.

Shortly before her scheduled arraignment, Gonzalez filed a motion challenging any pretrial detention under Section 3142(f)(2)(A) of the Bail Reform Act.  After briefing and proceedings, a Magistrate Judge ordered Gonzalez detained pending trial.

## II.    JURISDICTION & STANDARD OF REVIEW

This Court has jurisdiction to review *de novo*, *see United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985), the Magistrate Judge's Pretrial Detention Order pursuant to 18 U.S.C. § 3145(b), which provides:

> If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

Here, the Court convened a hearing to assist with its "independent determination." *Id.* at 1394.

## III.    DISCUSSION

### A.    Legal Standard

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).  To that end, the Bail Reform Act created a two-step process to determine whether pretrial detention is appropriate.  *See United States v. Ailon-Ailon*, 875 F.3d 1334, 1336-37 (10th Cir. 2017) ("The [Bail Reform] Act establishes a two-step process for detaining an individual before trial."); *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) ("After a motion for detention has

been filed, the district court must undertake a two-step inquiry.").  The Government's burden at both steps is "the preponderance of the evidence".  *United States v. Himler*, 797 F.2d 156, 160-61 (3d Cir. 1986).

At step one, the Government must demonstrate, as a threshold matter, that it is entitled to seek pretrial detention under 18 U.S.C. § 3142(f).  *See id.* at 160 ("[D]etention may be ordered only 'after a hearing pursuant to the provisions of subsection (f)'" (quoting 18 U.S.C. § 3142(e)); *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) (same).  That section "does not authorize a detention hearing whenever the [G]overnment thinks detention would be desirable." *United States v. Ploof*, 851 F.2d 7, 9-10 (1st Cir. 1988).  Rather, it rather limits such hearings to the circumstances enumerated in subsections (f)(1) and (f)(2), which, as Congress explained, "in effect serve to limit the types of cases in which detention may be ordered prior to trial."  *Himler*, 797 F.2d at 160 (citing S. Rep. No. 225, 98th Cong., 1st Sess. at 20 (1983), *as printed in* U.S. Code Cong. & Admin. News (1984) at 3203).  Of relevance here, the Government argues that it is authorized to seek pretrial detention pursuant to subsection (f)(2)(A), which provides:

> (f) Detention hearing.  The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community—
>
> (2) upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves—
>
> > (A) a serious risk that such person will flee

*Id*.

If the Government establishes that a pretrial detention hearing is warranted under subsection (f)(2)(A), it must then, at step two, demonstrate that there is "no condition or combination of conditions [that] will reasonably assure the appearance of the person as required

and the safety of any other person and the community" pursuant to 18 U.S.C. § 3142(e).  *See*

*Ailon-Ailon*, 875 F.3d at 1336-37; *Friedman*, 837 F.2d at 49.  In making that determination,

courts are instructed to consider the following factors, which are enumerated in 18 U.S.C. §

3142(g):

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

> (2) the weight of the evidence against the person;

> (3) the history and characteristics of the person, including

>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and,

>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and,

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

### B.    Serious Risk of Flight

At the proceedings before the Magistrate Judge, the Government argued that pretrial

detention was warranted because Gonzalez posed a serious risk of flight under 18 U.S.C. §

3142(f)(2)(A).  Gonzalez countered that she posed no such risk: given the ICE detainer, she

argued, she would, upon release from the U.S. Marshall's custody: (1) be transferred directly to

ICE custody; and (2) subsequently removed from the United States.  Those facts, asserted

Gonzalez, "negate[] any possibility of flight."  After considering both positions, the Magistrate

Judge determined that the Government was authorized to seek pretrial detention pursuant to

subsection (f)(2)(A), stating, in relevant part:

> So, Ms. Gonzalez, just for the record, I have reviewed thoroughly the opposition motion and also the response by the Government to the opposition motion. And I also reviewed the Pre-Trial Services Interview and Report. It's very important that you understand that I do believe that there are equal issues to be considered under both arguments. However, if under the Bail Reform Act I am permitted to apply my standard analysis, then in totality of what I have read indicates as follows.
>
> Number one, I note that you were charged with illegal entry aggravated, which now would theoretically increase your exposure to a time of incarceration, potentially which is significantly higher than had this been your first situation.
>
> I note also that under the Bail Reform Act, you don't necessarily have to take any action toward actual flight. You have to be a risk of flight.
>
> And in this case, Pre-Trial [Services] has determined you are a risk—a significant risk of flight, as they put it, because, number one, you have a location where you were renting a room for seven months. You declined to provide the address of that location because of immigration status. You have no known familial ties to the area. I know that, according to the interview, or according to the information that I have, you came here in an unspecified period of time. That you entered without any type of Dominican passport. I know that you have traveled, as we say. You have reported mental health and physical health issues.
>
> And as I said, on my independent analysis of the criteria that I have to analyze, I do believe that you are a significant risk of flight. So I'm going to grant the Government's motion for a hearing . . . .

In seeking to vacate the Pretrial Detention Order, Gonzalez renews her argument that she cannot "flee" with an ICE detainer lodged against her. She submits that the plain meaning of the term "flight," as used in the Bail Reform Act, requires "volitional conduct" on her part. Thus, in her view, being released into ICE custody—where she faces the likelihood of imminent deportation—cannot constitute "a serious risk of flight" because it is entirely involuntary on her part. The Government strenuously disagrees with this reading of the Bail Reform Act, arguing that adopting Gonzalez's interpretation of the term would defy two "canon[s] of statutory construction"—namely, that statutes should be construed to: (1) give effect to all provisions so

that no one part will be inoperative, superfluous, void, or insignificant; and (2) avoid absurd results.

The crux of this dispute, then, turns on whether the likelihood of imminent, involuntary removal by ICE constitutes "a serious risk of flight" under subsection (f)(2)(A)—a question that appears to be an issue of first impression within the Third Circuit and several other courts throughout the country.  *Cf. United States v. Hernandez Cerrato*, 2024 WL 1329296, at *2 (D. Md. Mar. 28, 2024) (explaining that "[t]here is limited authority on what constitutes a 'serious risk that such person will flee'" under 18 U.S.C. § 3142(f)(2)(A)).  Where a statutory term— here, flight—is undefined or ambiguous, "statutory interpretation begins with an examination of the statute's plain language."  *Burton v. Schamp*, 25 F.4th 198, 207 (3d Cir. 2022); *see also Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014) ("Our analysis begins and ends with the text[.]").  "In determining whether the meaning of a statutory term is plain . . . 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole'" should be considered.  *New Jersey Bankers Ass'n v. Att'y Gen. New Jersey*, 49 F.4th 849, 857 (3d Cir. 2022) (quoting *Byrd v. Shannon*, 715 F.3d 117, 123 (3d Cir. 2013)).  "Where the legislature has expressed its will in language that has a reasonably plain meaning, that language must ordinarily be regarded as conclusive."  *Id.* (cleaned up).

Here, the plain meaning of "flight" contemplates volitional conduct where an individual chooses to "run away" from, "escape," or "evade" a person, situation, or location.  For instance, Black's Law Dictionary defines "flee" as: (1) "[t]o run away; to hasten off"; (2) "[t]o run away or escape from danger, pursuit, or unpleasantness; to try to evade a problem"; (3) "[t]o vanish; to cease to be visible"; and, (4) "[t]o abandon or forsake."  *See* "Flee," Black's Law Dictionary (12th ed. 2024).  Merriam-Webster's Dictionary similarly defines the term as: (1) "to run away

often from danger or evil"; and (2) "to hurry toward a place of security." *See* "Flee," Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/flee.  Those meanings have remained unchanged since the Bail Reform Act's enactment in 1984.  *See United States v. Storme*, 83 F.4th 1078, 1083 (7th Cir. 2023) (citing "Flee," Webster's Third New International Dictionary (1976) ("to run away from"); "Flee," Webster's II New Riverside University Dictionary (1984) ("to run away"); "Flee," American Heritage Dictionary (2d Coll. Ed. 1982) ("to run away from or as from danger")); *see also Panzarella v. Navient Sols., Inc*., 37 F.4th 867, 872 (3d Cir. 2022) (stating that courts should "seek to determine" the plain meaning of an undefined statutory term by examining how it was defined at the time of the statute's enactment (citing *Bostock v. Clayton Cnty*, 590 U.S. 644, 654-55 (2020)).  In sum, the possibility of Gonzalez's imminent, involuntary removal from the United States cannot constitute "flight" under a plain reading of 18 U.S.C. § 3142(f)(2)(A), as she would not be leaving the jurisdiction of her own accord, but rather be removed from it by ICE.

That interpretation comports with how the Seventh and Tenth Circuits have construed the term, "flight," when analyzing the Bail Reform Act.  *See Storme*, 83 F.4th at 1083 ("[T]he plain import of the term 'flight'" as set forth in the Bail Reform Act "connotes an intentional act by a defendant to evade criminal prosecution by leaving the jurisdiction." (citing *Ailon-Ailon*, 875 F.3d at 1337); *Ailon-Ailon*, 875 F.3d at 1338 (determining that "the ordinary meaning of 'flee'" in 18 U.S.C. § 3142(f)(2)(A) "suggests volitional conduct").

The Government argues that 18 U.S.C. § 3142(f)(2)(A) should not be read so "myopically," given the Third Circuit's statement that the Bail Reform Act and the Immigration Code "can coexist."  *United States v. Soriano Nunez*, 928 F.3d 240, 245 (3d Cir. 2019).  In the Government's view, this means that ICE should be permitted to "carry out its statutory duty to

remove Gonzalez" pursuant to the Immigration and Nationality Act, *see* 8 U.S.C. § 1231, but also, consistent with the Bail Reform Act, allow the U.S. Attorney's Office to first prosecute her for illegal reentry in a proceeding in which pretrial detention is warranted . . . to *assure her appearance*." But the Government's argument, which focuses on preventing the risk of nonappearance, ignores the structure of the Bail Reform Act, which ultimately lends further support for the plain meaning interpretation of the term "flight." *See New Jersey Bankers Ass'n*, 49 F.4th at 857.

First, the "Bail Reform Act's detention provisions . . . draw an important distinction between nonappearance risk broadly and risk of flight more specifically." *United States v. White*, 2021 WL 2155441 at *10 (M.D. Tenn. May 27, 2021) (citing Lauryn P. Gouldin, Defining Flight Risk, 85 U. Chi. L. Rev. 677, 701 (2018)). To take just a few examples, in 18 U.S.C. § 3142(f)(2)(A), the Government must demonstrate by a preponderance of the evidence that the case involves "a serious risk that such person *will flee*." *Id.* (emphases added); *Himler*, 797 F.2d at 160-61. Meanwhile, in 18 U.S.C. § 3142(e)—the statute at issue in step two of the pretrial detention inquiry—the Government must establish by a preponderance of the evidence that there exist "no condition or combination of conditions [that] will reasonably assure the *appearance of the person* as required[.]" *Id.* (emphases added); *Himler*, 797 F.2d at 160-61. Likewise, under 18 U.S.C. § 3146(d), courts are required to impose penalties for any person who knowingly "*fails to appear*" unless that person submits evidence that "uncontrollable circumstances prevented [her] from *appearing*" and that she "did not contribute to the creation of such circumstances in reckless disregard of the requirement to *appear*." *Id.* (emphases added).

The distinction between those terms is instructive because evidence suggesting that a defendant "poses a general risk of nonappearance does not necessarily support a finding that the

case involves a serious risk of flight under subsection (f), a risk that would contemplate a voluntary action by a defendant to flee." *United States v. Cobix-Espinoza*, 655 F. Supp.3d 584, 589 (E.D. Ky. 2023). As the Tenth Circuit explained, "one would not describe an individual who has been arrested at a crime scene and involuntarily transported to a police station as having fled the scene." *Ailon-Ailon*, 875 F.3d at 1338. Therefore, the structure of the Bail Reform Act suggests that "flight and nonappearance are not simply interchangeable names for the same concept, nor are they merely different degrees of the same type of risk." *White*, 2021 WL 2155441, at *10 (citing Gouldin, *Defining Flight Risk*, at 677). "Congress could have drafted the statute so as to omit any requirement for detention that the case involve a 'serious risk of flight' and to direct courts to require only that the case involve a risk of non-appearance (that cannot adequately be mitigated by conditions of release)." *Id.* at *6. But it did not do so, and "[w]here Congress uses different language within the same statute, courts presume Congress meant the language to bear different meanings." *United States v. Hernandez Cerrato*, 2024 WL 1329296, at *2 (D. Md. Mar. 28, 2024), *aff'd as modified*, 2024 WL 1532748 (D. Md. Apr. 9, 2024); *see also Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017) ("[W]hen we're engaged in the business of interpreting statutes we presume differences in language like this convey differences in meaning."). Even if one were to assume that the distinction is *de minimis*, as the Ninth Circuit has suggested, nonappearance also requires an element of volition. *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015) ("As a number of district courts have persuasively explained, the risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition." (citing *United States v. Trujillo-Alvarez*, 900 F. Supp.2d 1167, 1176-78 (D. Or. 2012)).

      Aside from the distinction between those two terms, other provisions of the Bail Reform

Act suggest that Congress rejected a presumption that removable aliens inherently pose a serious risk of flight.  "As a familiar canon of construction states, *expressio unius est exclusio alterius*: the expression of one thing is the exclusion of the other."  *United States v. Nasir*, 17 F.4th 459, 471–72 (3d Cir. 2021).  To that end, 18 U.S.C.§ 3142(f)(1) sets out five categories of federal offenses where the Government is presumptively entitled to seek pretrial detention at step one of the inquiry.  Those include:

> (A) a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
>
> (B) an offense for which the maximum sentence is life imprisonment or death;
>
> (C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et seq*.), the Controlled Substances Import and Export Act (21 U.S.C. § 951 *et seq*.), or chapter 705 of title 46;
>
> (D) any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; and,
>
> (E) any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon, or involves a failure to register under section 2250 of title 18, United States Code.

*Id.*  Several of these categories reappear at step two of the pretrial detention analysis in 18 U.S.C. § 3142(e)(3), which details certain offenses for which it is presumed that "no condition or combination of conditions will reasonably assure the appearance of the person as required."

Construed together, those two sections—18 U.S.C. §§ (f)(1) and (e)(3)—reflect Congress's finding that "certain offenders pose special risks of flight."  *United States v. Sheikh*,

994 F. Supp.2d 736, 739 (E.D.N.C. 2014); *see also United States v. Suastegui*, 2018 WL 3715765 at \*4 (W.D. Va. Aug. 3, 2018) ("By including certain offenses for which detention is presumed, Congress sought to address those defendants who 'have both the resources and foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences.'" (quoting S. Rep. No. 98-225, at 20 (1984), *as printed in* U.S. Code Cong. & Admin. News at 3182, 3203 (1984))).  Therefore, the fact that Congress did not include illegal reentry in either section suggests that removable aliens, as a category of defendants, do not presumptively pose a serious risk of flight.  *Cf. Ailon-Ailon*, 875 F.3d at 1138.  And taken to its extreme, the Government's argument at step one would, in essence, have the Court rewrite the Bail Reform Act to include such a presumption of detention simply because an alien defendant is subject to an ICE detainer.

Instead, Congress affirmatively set forth "specific procedures to be followed when a judicial officer determines that a defendant is not a citizen of the United States or lawfully admitted for permanent residence." *Santos-Flores*, 794 F.3d at 1090-91.  Section 3142(d) of the Bail Reform Act "allows a court to temporarily detain persons not lawfully admitted to the United States, as well as individuals who are on pretrial or post-conviction release on other federal, state, or local charges, so that immigration and other officials can take custody of such individuals before . . . conditions of release are set." *Soriano Nunez*, 928 F.3d at 244 (citing 18 U.S.C. § 3142(d)).  That section directs judicial officers to:

> order the detention of such person, for a period of not more than ten days . . .  and direct the attorney for the Government to notify the appropriate court, probation or parole official, or State or local law enforcement official, or the appropriate official of the Immigration and Naturalization Service.  If the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings.

*Id.* (citing 18 U.S.C. § 3142(d)).  In a recent case reviewing that provision, the Third Circuit stated that "[o]ther than during this temporary detention period, individuals on release arising from other offenses and non-citizens are treated the same as other pretrial criminal defendants under the [Bail Reform Act]."  *Id.* at 244-45 (citing *Santos-Flores*, 794 F.3d at 1091).  Indeed, it noted (albeit in a footnote) that "the presence of an ICE detainer and the threat of potential removal alone are not sufficient to deny [Bail Reform Act] pretrial release."  *Id.* at 245 n.4 (citing *Ailon-Ailon*, 875 F.3d at 1338-39).

Undeterred, the Government argues that interpreting "flight" to require volitional conduct would produce "absurd results."  *See Aristy-Rosa v. Att'y Gen. United States*, 994 F.3d 112, 116 (3d Cir. 2021) (explaining that the plain text of the statute should be followed unless its "literal meaning . . . could lead to a patently absurd result that no rational legislature could have intended").  It maintains that if it is "disallowed from seeking detention in this case," Gonzalez "will be remanded to ICE custody, and effectively out of control of this Court to assure she is available to appear in federal court."  The result, the Government contends, would be that Gonzalez will almost certainly be deported and thus never will have to "answer for the criminal charge"—a situation that would purportedly "nullify criminal prosecution[s]" for illegal reentry and "incentivize all defendants charged with [that offense] to make a similar motion for release."

Not so.  If anything, it is the Government's construction that would produce absurd results, as the Bail Reform Act's "carefully crafted detention plan . . . would simply be overruled by an ICE detainer" precluding "any kind of individualized consideration of a person before the Court" at step one of the inquiry.  *Ailon-Ailon*, 875 F.3d at 1338 (quoting *United States v. Barrera-Omana*, 638 F. Supp.2d 1108, 1111 (D. Minn. 2009)).  Regardless, although nothing in the Bail Reform Act or the Immigration Code "give[s] a court the authority to require the

Executive to choose which laws to enforce" and when, *see Soriano Nunez*, 928 F.3d at 247, Gonzalez's counsel noted that, upon information and belief, the United States Attorney's Office for the Southern District of New York coordinates with its ICE counterparts in Manhattan to avoid the very situation the Government fears here.  There, prosecutions for illegal reentry are initiated before ICE begins removal proceedings.  Only after the criminal prosecution concludes does ICE lodge a detainer against the affected individuals, meaning that if they were to be released before trial, they would not be subject to the possibility of imminent deportation.

*   *   *   *

In sum, the possibility of Gonzalez's imminent, involuntary removal from the United States cannot constitute a "serious risk of flight" under a plain reading of 18 U.S.C. § 3142(f)(2)(A).  Because the Government has failed to carry its burden of establishing by a preponderance of the evidence that she poses a "serious risk of flight," the Magistrate Judge therefore erred in allowing the Government to seek pretrial detention under the Bail Reform Act.

For those reasons, Gonzalez's Motion shall be granted.  An appropriate order follows.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

_____
**WENDY BEETLESTONE, J.**